TEICH GROH
By: Brian W. Hofmeister, Esq.
691 State Highway 33
Trenton, New Jersey  08619
(609) 890-1500
(609) 890-6961 - facsimile
bhofmeister@teichgroh.com
Attorneys for Debtor

_____

| | |
|---|---|
| In the Matter of: | ) UNITED STATES BANRKUPTCY COURT |
| | ) FOR THE DISTRICT OF NEW JERSEY |
| FHG ENTERPRISES, INC. | ) |
| | ) CASE NO. 11- |
| | ) |
| | ) |
| Debtor. | ) CHAPTER 11 |
| | ) |
| | ) RETURN DATE: |
| | ) Oral Argument: Required |
| | ) |
| _____ | ) |

**VERIFIED APPLICATION IN SUPPORT OF MOTION FOR AN INTERIM ORDER PURSUANT TO SECTION 353(C)(2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (2) PROVIDING ADEQUATE PROTECTION FOR USE OF CASH COLLATERAL; AND (3) SCHEDULING A FINAL HEARING**

**TO:   HONORABLE JUDGE OF THE
         UNITED STATES BANKRUPTCY COURT**

The Verified Application of FHG Enterprises, Inc., the within debtor and debtor-in-possession (the "Debtor:), by and through its proposed counsel, Teich Groh, respectfully represents:

I.   INTRODUCTION AND JURISDICTION

1. This Motion seeks entry of an Order authorizing the Debtor's interim use of cash collateral and scheduling a final hearing pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001 (the "Motion").  As set forth below, granting the Debtor the relief requested in the Motion is crucial to the Debtor's ability to operate its business during this Chapter 11 proceeding without

interruption.

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(B)(2)(A) and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## II. BACKGROUND

4. On August 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### The Debtor's Pre-Petition Financing Arrangements

5. The Debtor together with its affiliates, FHG Acquisitions, LLC, FHG Development New Jersey, LLC and FHG South Jersey, LLC., is a party to three (3) loan facilities with General Electric Capital Corporation ("GECC" or "Secured Creditor") as a borrower and/or guarantor, Loan Numbers 432371, 432372 and 431756 (collectively, the "Loans"). The present outstanding balance on the Loans is approximately $9.8 Million Dollars. As security for the Loans GECC was to receive, among other things, a lien on certain of the Debtor's equipment, inventory, documents, general intangibles, accounts, contract rights, chattel paper and instruments, money, securities, investment properties, deposit accounts, good will, etc. A recent UCC-1 search reveals that there are no UCC-1 and/or UCC-3 Financing and Continuation Statements were filed as to the Debtor in New Jersey or New York. See UCC-1 and UCC-3 Financing and Continuation Statements attached hereto as Exhibit "A". While the Debtor believes that the GECC Loans may not be secured by the Debtor's assets, the Debtor has filed the within Motion as a precautionary measure in the event the GECC Loans are, in fact, secured by the Debtor's assets.

### III. RELIEF REQUESTED AND BASIS THEREFOR

6. The Debtor urgently requires working capital and the use of Cash Collateral to enable it to continue its operations. Attached as Exhibit "B" to the Motion is a budget and cash flow projection showing the Debtor's projected monthly expenditures, cash flow and borrowing needed monthly from August 3, 2011 through December 31, 2011. Included therein are payroll and other expenses, all of which must be paid in order for operations to continue without interruption.

7. Without the immediate authority to use Cash Collateral, the Debtor will be unable to pay its ordinary and necessary business expenses including, but not limited to, payroll and related obligations, utilities, suppliers and insurance. As a result, the Debtor's operations necessarily would be disrupted or even cease, thereby thwarting the Debtor's ability to reorganize and causing the estate to suffer irreparable harm.

8. A chapter 11 debtor-in-possession has the statutory right to use cash collateral to operate its business. The standards governing a debtor's use of cash collateral are set forth in Section 363(c)(2) of the Bankruptcy Code. That statute provides:

> The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph 1 of this subsection, unless-
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

9. The "provision of this section" referenced in section 363(c)(2) includes section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the

    court, with or without a hearing, shall prohibit or condition such
    use, sale or lease as is necessary to provide adequate protection of
    such interest.

11 U.S.C. § 363.(e).

ADEQUATE PROTECTION FOR USE OF CASH COLLATERAL

   10.  Pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use the Cash Collateral without the consent of the creditor unless authorized by the Court. See 11 U.S.C. § 363(c)(2). Bankruptcy Code Section 363(e) provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. Id. § 363(e).

   11.  What constitutes adequate protection must be decided on a case by case basis. See In re O'Connor, 808 F. 2d 1393, 1399 (10th Cir. 1987); In re Martin, 761 F. 2d 472, 479 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor for diminution of the value of its interest in the particular collateral during the use period. See In re Dunes Casino Hotel, 69 B.R. 784, 797 (Bankr. D.N.J. 1986) (the "concept of adequate protection is intended to protect a creditor's interest in collateral"). See also In re Ledgemere Land Corp., 116 B.R. 338, 344 (Bankr. D. Mass. 1990); In re Kain, 86 B.R. 506, 520 (Bankr. W.D. Mich. 1988); In re Beker Indus. Corp., 58 B.R. 725, 743 (Bankr. S.D.N.Y. 1986).

   12.  Although adequate protection can take many forms, Section 361(2) of the Bankruptcy Code provides that one form of adequate protection is providing the secured creditor with a replacement lien to the extent that the use of cash collateral results in a decrease in the value of the creditor's interest in its collateral. Courts have relied on this provision of Section 361 to fashion adequate protection and to permit a debtor to use cash collateral under similar circumstances. See e.g., In re Mocco, 176 B.R. 335, 348 (Bankr. D.N.J. 1995) ("Adequate protection, as defined in

[section] . . . 361, is normally provided in the form of . . . a replacement lien"); In re Prichard Plaza Associates, L.P., 84 B.R. 289, 303 (Bankr. D. Mass. 1988); In re Airport Inn Assoc., Ltd., 132 B.R. 951, 962 (Bankr. D. Col. 1990) ("The Court could order a lien in post-petition accounts receivable as adequate protection if that relief was requested . . ."); In re Int'l Design & Display Group, Inc., 154 B.R. 362, 364 (Bankr. S.D.Fla. 1993).

13. In order (i) to adequately protect the Secured Creditor in connection with the Debtor's use of cash collateral, and (ii) to provide the Secured Creditor with adequate protection in respect to any diminution in the value of the Collateral that is subject to the Secured Creditor's security interest or lien as of the Petition Date, resulting from the stay imposed under Section 362 of the Bankruptcy Code, or caused by the use of such Collateral by the Debtor, the Secured Creditor shall have and is hereby granted as of the Petition Date, (a) to the extent not heretofore granted or to the extent heretofore rendered ineffective pursuant to Section 552 of the Bankruptcy Code, a valid and perfected replacement security interest and lien, superior to all other claims of creditors of the estate of the Debtor, in and upon all assets of the Debtor's estate including, but not limited to, now existing and hereafter acquired personal property of the Debtor and its bankruptcy estate, of whatever kind or nature, wherever located, whether acquired prior to of after the filing of the petition commencing the Chapter 11 case, personal, real, tangible and intangible property, accounts receivable, contract rights, cash, instruments, inventory, chattel paper, vehicles, machinery and equipment, general intangibles (including tax refunds), customer lists, subscribers, the Debtor's (and its respective successor') documents, goods, furniture, fixtures, and all products, proceeds, rents and profits of the foregoing, whether acquired by the Debtor prior to or after the commencement of the Chapter 11 case, but excluding any causes of action, including, but not limited to, pursuant to Sections 510, 544, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Post-Petition

Collateral") to the extent of any diminution of the value of the Secured Creditor's Collateral arising from such use.

14. The security interests in and liens of the Secured Creditor upon the Post-Petition Collateral shall (a) not have priority over any Pre-Petition Date liens on the Debtor's Property *provided, that*, that such liens are valid, perfected and non-avoidable and have a priority over the Secured Creditor in accordance with applicable law as of the Petition Date; (b) not have priority over the fees and expenses of the professionals retained by the Debtor or any Committee to the extent allowed in the Budget and approved by the Bankruptcy Court, and (c) not have priority over any claims of the United States Trustee for fees and expenses pursuant to 28 U.S.C. § 1930 (collectively the "Carve-Out").

15. To the extent that the adequate protection provided in this Order is ultimately determined to be insufficient, the Secured Creditor is hereby granted a superpriority administrative claim having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 326, 330, 331, 503(b), or 506(c) of the Bankruptcy Code pursuant to Section 507(b) of the Bankruptcy Code, provided, however, that the Secured Creditor superpriority administrative claim as provided herein shall be subordinate to any Carve-Out claims.

<u>INTERIM APPROVAL SHOULD BE GRANTED.</u>

16. Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to

avoid immediate and irreparable harm to a debtor's estate.

17. Attached as Exhibit "B" is a draft cash flow projection showing the Debtor can operate profitably in Chapter 11.

18. Pursuant to Bankruptcy Rules 4001(b) and 4001(c), the Debtor requests that the Court (i) authorize the Debtor to use Cash Collateral from and after the entry of the Order, in order to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to its estate and to all parties in interest, (ii) find that adequate protection exists and to the Debtor's use of Cash Collateral, and (iii) schedule a final hearing on the Motion (the "Final Hearing") to consider entry of a final order with respect to the use of Cash Collateral.

19. The interim Order is essential for the Debtor to maintain and restore vendor and supplier confidence in the Debtor's ability to pay for goods and services rendered after the Petition Date.

## IV.    NOTICE, PRIOR APPLICATIONS AND WAIVER OF BRIEF

20. No trustee, examiner or statutory creditor's committee has been appointed in the Debtor's Chapter 11 case. In light of the Debtor's immediate need to use Cash Collateral to avoid irreparable harm to the estate, the Debtor has provided notice of the Motion to (i) the Office of the United States Trustee; (ii) the attorney for the Secured Creditor; and (iii) the twenty largest unsecured creditors of the Debtor. The Debtor submits that no other or further notice of the request for entry of the interim Order is necessary.

21. No prior motion for the relief requested herein has been made to this or any other Court.

225. Pursuant to District of New Jersey Local Bankruptcy Rule 9013-2, and because there are no novel issues of law presented by this Motion, the Debtor submits that no brief is necessary

in support of the Motion.

WHEREFORE, the Debtor respectfully requests entry of the accompanying Order (i) authorizing the Debtor's interim use of Cash Collateral as set forth herein; (ii) finding that adequate protection exists as to the Debtor's use of Cash Collateral; (iii) scheduling a Final Hearing to consider the Motion and use of Cash Collateral; and (iv) granting such other and further relief as the Court deems just and proper.

        Respectfully submitted,

        TEICH GROH
        Attorneys for Debtor, FHG Enterprises, Inc.


BY:  */s/Brian W. Hofmeister*
      Brian W. Hofmeister

Dated: August 2, 2011

## VERIFICATION

Joseph Gatas, of full age, verifies as follows:

1. I am a managing member of FHG Development New Jersey, LLC, the within debtor and debtor-in-possession (the "Debtor"). As such, I have full knowledge of the facts set forth herein, and am authorized to make this Application on the Debtor's behalf.

2. I have read the Verified Application and certify that the factual statements contained herein are true based upon my personal knowledge, information and belief.

3. I am aware that if any of the foregoing statements contained in the Verified Application are willfully false, I am subject to punishment.

By: */s/Joseph Gatas*
Joseph N. Gatas
Managing Member

Dated: August 2, 2011